CENTRAL R. & BANKING CO. OF GEORGIA v. FARMERS' LOAN &
TRUST CO. (FARRAR et al., Interveners).

(Circuit Court, S. D. Georgia. October 31, 1901.)

EQUITY—ANCILLARY JURISDICTION OF INTERVENTION—LACHES.

A railroad company leased its line to another company, the lease providing that the rental should be paid directly to its stockholders in the nature of dividends on their stock. In subsequent litigation in a federal court, in which mortgages given by the lessee company were foreclosed, a receiver was appointed, who took possession of and operated the leased line, but paid no rental thereon. The lessor company intervened, and became a party to such litigation, and by a compromise settlement, by which the lessee company was reorganized, it was agreed that the lessor company should receive the net earnings of the line under the receivership, and that the reorganized company should pay it a further sum, and take a renewal lease. Such agreement was ratified by the court, the sums were paid, and the lessor company distributed a portion of the fund as a dividend to its stockholders, and used a portion for other purposes. The dividend was accepted by its stockholders, a majority of whom at a stockholders' meeting ratified the company's action. Five years afterwards certain of the stockholders filed a bill of intervention in the suit against the company and the reorganized lessee company, alleging that the entire fund received under the compromise settlement was for rental, and under the terms of the original lease was the property of the stockholders, and not of the corporation, which merely took it in trust; and the bill prayed that the company be required to distribute the remainder of such fund to them. *Held*, that the reorganized company was not a proper party to such bill, and that the intervention should be dismissed as to the lessor company: (1) Because the original lease was abrogated by the receivership, and the net earnings thereunder awarded to the lessor were not governed by its provisions; (2) because, if the further sum paid by the reorganized company for a renewal of the lease be regarded as rental under the original lease, the bill showed that an amount in excess of such payment had been distributed to the stockholders as a dividend, and received without objection; (3) because the interveners were represented in the original litigation by the company without objection, and their rights as against all other parties to the suit fully determined, and the questions sought to be raised by the intervention, having arisen out of dealings between the company and its stockholders after the litigation was closed so far as such company was concerned, were not properly within the ancillary jurisdiction of the court; (4) because the demands sought to be enforced were stale, and the right to relief barred by laches.

In Equity. On demurrer to bill of intervention filed by Robert M. Farrar and others, and on motion to dismiss intervention.

Henry A. Alexander, for R. M. Farrar and others.

Adams, Freeman, Denmark & Adams and Hardeman, Davis & Turner, for Southwestern R. Co.

Lawton & Cunningham, for Central R. & Banking Co. of Georgia.

PARDEE, Circuit Judge. This case has been submitted on the demurrer of the Central of Georgia Railway Company to the bill of intervention, and on the motion of the Southwestern Railroad Company to dismiss the intervention on various grounds assigned. The bill of intervention filed December 13, 1900, is very lengthy, and, as the counsel has furnished an analysis of the allegations, combined

112 F.—6

with a statement of the purposes of the bill, the same is taken as the statement of the case, to wit:

"Intervention of Robert M. Farrar et al.

"(1) Alleges that large sum of money, which was the individual property of petitioner and others of their class, realized by a compromise of their individual claims for defaulted rentals against Central Railroad & Banking Company of Georgia, which sums were ordered and decreed by this court to be paid and distributed to petitioners and others, the true owners thereof. That said sum has never reached the possession of the true owners thereof for which it was intended, but the Southwestern Railroad, to whom said fund was paid for distribution, has diverted the same from its owners. (2) That under lease money was paid directly to the individual stockholders of the Southwestern Railroad by disbursing officer of Central Railroad & Banking Company of Georgia, and at no time passed into possession or control of Southwestern Railroad Company. (3) Said lease continued unbrokenly and continuously in existence until November 1, 1895, when the Southwestern Railroad and the successor of the Central agreed upon a new lease in substitution of the old one. But during period beginning on the 1st of July, 1892, and ending October 31, 1895, the sums due stockholders of Southwestern Railroad Company fell in arrears, and were not paid. (4) Under terms of lease any person a stockholder in Southwestern Railroad Company at the time of period when dividends should have been declared or paid acquired by the very fact a vested personal right against the Central Railroad & Banking Company of Georgia, which was his own individual property, and which could be enforced by suit. Said vested right was in no sense either the property of or vested in Southwestern Railroad Company. The fact that said dividends were not paid at any period did not deprive the person who held the stock of any right. The dividend was predeclared throughout the whole period of lease. (5) Recites fact of filing of bill by Rowena M. Clark, and subsequent filing of bill of Central Railroad & Banking Company of Georgia. One of the principal features of the litigation was the effort of Southwestern Railroad Company to establish its relation to the holders of tripartite bonds of surety and not of co-obligor. About middle of 1895 the various parties reached a settlement of their differences, which was expressed and formulated in a plan of reorganization. (Exhibit B.) In decree confirming the sale under the consolidated mortgage, and on all subsequent orders ratifying the successive steps by which title finally passed to the Central of Georgia Railway Company, the court expressly reserved the right to enforce the obligations assumed in the plan of reorganization, and petitioner shows that any beneficiary of any stipulation in said plan has the right and privilege of invoking the jurisdiction of this court to secure its enforcement. Among the properties placed in the hands of the receiver first appointed was the leasehold interest on the Central in Southwestern Railroad. As the holder of said interest, he and his successors continued to operate and receive the earnings until November 1, 1895. In June, 1892, last dividend was paid to stockholders of Southwestern Railroad. Default was first made in December, 1892. On January 19, 1893, the leasehold interest of the Central in the Southwestern Railroad Company was pledged with other collaterals to the Mercantile Trust Company of New York, and said leasehold interest remained so pledged until the execution of said plan of reorganization, when, in pursuance thereof, on September 18, 1895, Thomas & Ryan bought in said collaterals for benefit of new company. Thomas & Ryan afterwards conveyed said interest to Central of Georgia Railway Company. Said leasehold interest of June 24, 1869, having been thus acquired, the Central of Georgia Railway Company and Southwestern Railroad agreed upon a new lease contract as a substitute for the old one, and the same went into effect November 1, 1895. (Exhibit C.) The lease of 1869 having thus been continuously in existence during the receivership, each stockholder became entitled in June and December of each year to a semiannual dividend of 3½ per cent. These individual claims became a very large amount, and the compromise thereof was the subject of a special provision in the reorganization plan. The new

company will obtain new leases of the Southwestern and Augusta & Savannah Railroads at the rental of 5 per cent. upon their respective capital stocks. Any arrears of rentals due these railroad companies, respectively, shall be adjusted on this basis: Order of November 1, 1895, is attached as Exhibit D, and leave of reference is prayed to that and to all parts of record. Inasmuch as said fund referred to in order of November 1, 1895, was the amount due to individual claims of petitioners and others, the same was their property, and could not have been legally paid to the Southwestern Railroad Company for its own use, but must have been paid to it for use of its true owners. Period of default extending from July 1, 1892, to November 1, 1895, covered a period of 3⅓ years. On basis of the compromise a dividend of 16⅔ per cent. was due to stockholders. Dividends are due to those who were stockholders on the 30th of June and 31st of December. Shows that under compromise set out in plan of reorganization the Southwestern stockholders were entitled to $865,183.34. This was not received, as credit of $25,000 was allowed upon the same on account of order of April 14, 1894. This was taken by Southwestern Railroad, and used for its corporate purposes, to the injury of its stockholders. After compromise fund was received by the Southwestern Railroad Company, they should have distributed it; but they did not do this, but diverted it to its own corporate purposes. They paid out of this fund its attorneys, agents, and bankers, $263,668.66, and on December 24, 1895, out of same, 10 per cent. upon par value of their stock,—$519,900; the same to be paid on and after January 14, 1896. Resolution declaring said dividend was as follows: 'That a dividend of ten dollars and eighty cents ($10.80) per share on the capital stock of this company is this day declared payable to the stockholders of record on this date on and after the 14th day of January, 1896, at the Central Georgia Bank, Macon, Ga., and at the Citizens' Bank of Savannah, Savannah, Georgia; ten dollars ($10.00) of said dividend being declared for amounts accruing on said stock to November 1, 1895, and eighty cents (.80) thereof being out of amounts accruing under the lease to the Central of Georgia Railway from November 1, 1895, to January 1, 1896. The transfer books of the company will be closed from this date until January 14, 1896.' Alleges that this was not a true dividend, but merely a partial payment by the collecting agent of that to which the owners were entitled. After payment of said alleged dividend, there was left, together with interest, a balance of $83,197.83, which now remains in the hands of said company, and amounts to about $100,000. Alleges that, although attention to the fact that it had no right or title to said fund, it has done nothing to return the same so diverted to its true owners. Robert M. Farrar claims an interest by virtue of an assignment made by Julius M. Alexander dated July 15, 1899. Alexander, assignor, applied partial payment upon his claim against the Southwestern Railroad arising out of ownership of stock. Alexander received written assignment from the former owners of stock in the Southwestern Railroad of the rights of his assignors in 13 shares of stock: Amelia C. Brown owns 17 shares; Amelia C. Brown, executrix, owns 38 shares; Mrs. S. S. Alexander, administratrix of Joseph A. Alexander, deceased, owns 5 shares; Geo. Woodruff, up to May, 1893, owns 377 shares; S. S. Solomons (acquired 1895) owns 100 shares, receiving an assignment from seller as to back dividends. Sets out claims of several parties on page 12. Alleges that neither they nor those who preceded them in title have in any manner ratified or confirmed the action of the Southwestern Railroad in dealing with the fund aforesaid. J. M. Alexander did, on the 10th day of February, 1896, give power of attorney to J. S. Baxter and W. G. Raoul, which authorized them 'to represent me, and to vote in my name, at all meetings of the stockholders for any purpose whatsoever, until this power of attorney shall be revoked.' This was used to pass the following resolution at ensuing meeting of stockholders: 'Resolved, that all the acts and doings of the board of directors of this company and its president during the past year be, and the same are hereby, ratified.' Alleges that if the fact of the act of said attorneys in voting for said resolution was to deprive petitioner of the interest in the undistributed portion of the compromise fund, such action was unauthorized and void. No one who received the alleged dividends of December 24, 1895, ratified thereby the acts of said

Southwestern Railroad Company. The Southwestern were only agents for the owners of the dividends, and no estoppel could arise against them. (Page 13.) Stockholders' meeting of February 13, 1896, had no power to deal with or dispose of a fund which belonged to those who had been stockholders throughout an antecedent period of some three and a half years, and who had in many instances parted with their stock, and had no right to take part in stockholders' meetings, but who still retained their right to defaulted rentals against the lessee company. The payment of the 10 per cent. to those who were stockholders December 24, 1895, deprived many persons who had been stockholders of their lawful share of said fund. The $100,000 now in hands of Southwestern Railroad, $263,668.86 paid out for attorneys, bankers, etc., and the dividend by payment of alleged dividend of December 24, 1895, together constitute a trust fund to which Southwestern Railroad has no right, the same having been paid to it as agent of this court for distribution to the owners. Its present possession is illegal and wrongful. The Southwestern Railroad repudiates its relation to said fund as agent, and asserts its own absolute title thereto. No person or corporation is entitled to said fund, and it should be taken charge of by this court. Petitioners bring this complaint not only to recover balance of fund, but also to enforce distribution of the same spent by Southwestern Railroad for its own debts, and the sums illegally diverted from their owners by dividend of December 24, 1895. Petition is in behalf of all parties interested in said fund. Refers to Farrar's suit in Bibb superior court, which has not been tried."

From this analysis and statement it plainly appears that the interveners ratify the compromise set out in the plan of reorganization of the Central Railroad & Banking Company of Georgia and its properties, which was ratified by order of this court November 1, 1895, under which the Southwestern Railroad Company received the sum of $865,183.34 in cash and credits; and, as it appears that the Central of Georgia Railway Company complied with all its obligations and duties under said compromise and the order of court approving the same, and as there are no facts stated in the bill of intervention which show any duty or obligation of the Central of Georgia Railway Company in the disposition of the fund paid over to the Southwestern Railroad Company, the demurrer of the Central of Georgia Railway Company should be sustained.

With the Central of Georgia Railway Company out of the case, the controversy as set forth in the intervention seems to be wholly between the Southwestern Railroad Company and certain of its stockholders and their assignors, who at best assert only such demands against the said company as are fully cognizable at law; and all concerned are citizens of Georgia, and, as the jurisdiction of this court can only be invoked because ancillary to the main case, and such ancillary jurisdiction is very doubtful, the motion to dismiss the intervention should be granted.

In deference to the learned counsel who have ably and elaborately argued this case both orally and by brief, I deem it proper to further say that I find the demands contained in said intervention stale, and without equity, because:

1. The fund of $865,183.34 paid over to the Southwestern Railroad Company under the compromise plan by order of court in the main case was made up of net earnings of the Southwestern Railroad Company after the lease of 1869 was abrogated, so far as the receivership was concerned, and of a sum paid by the Central of

Georgia Railway Company to procure a renewed lease; and therefore was not a fund which any of the parties was required to pay direct to the stockholders of the Southwestern Railroad Company under the provisions of the lease of 1869, although it may be that in equity the said sum, when received by the Southwestern, was charged with the provisions contained in said lease, and the stockholders may have been in equity entitled to have had the same apportioned as to time and distribution in full.

2. Because of the fund paid over to the Southwestern Railroad Company under the compromise and order aforesaid the sum of $403,066.27 was the net earnings during the receivership after the abrogation of the lease of 1869, and was in no sense legally or equitably earned or paid over as rental under the lease of 1869; and if the balance, to wit, the sum of $462,187.07, paid in by the purchasers of the Georgia Central Railroad & Banking Company's properties to procure a renewal of the Southwestern lease, is to be considered in equity as the rental of the Southwestern Railroad under the lease of 1869, and as such due direct to the stockholders, then the case shows that this amount and more has been distributed directly to the stockholders of the Southwestern Railroad Company, interveners included.

3. Because in the main case in which this intervention is now filed the Southwestern Railroad Company was a party intervening in behalf of and representing all its stockholders and their interests without protest or objection, and no fraud or even mismanagement therein is now alleged or even suggested. The substantial matters complained of in this intervention relate to the dealings of the Southwestern Railroad Company with its stockholders subsequent to the last order made in the main case affecting the Southwestern Railroad Company and its stockholders, and after the main litigation was practically concluded, and the case, certainly so far as the Southwestern Railroad was concerned, was ended.

4. Because this intervention, presented more than five years after the Southwestern Railroad Company, representing the interests of its stockholders, passed out of the main case, and long after the great bulk of the stockholders of the Southwestern, including all these interveners but two (for Farrar and Solomons must be considered as standing in the shoes of their assignors), have ratified the acts and doings of the company, not only in the main case in this court, but afterwards, in dealing with the fund collected, by accepting dividends known to be based thereon, now comes too late, and the demands therein made are stale.

An order will be entered sustaining the demurrer, and granting the motion to dismiss the intervention.

### (November 1, 1901.)

It is now ordered that the said decree be, and the same is hereby, amended by adding at the end thereof the following: This decree to be without prejudice to the interveners' right to proceed in any court of competent jurisdiction against the Southwestern Railroad Company on any of the demands contained in said intervention.